# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Statesboro Division

| | | |
|---|---|---|
| In the matter of: | ) | Chapter 11 Case |
| JAMES G. SHANNON, JR. | ) | |
| | ) | Number 09-61153 |
| *Debtor* | ) | |
| | ) | |
| GEORGIA DEVELOPMENT AUTHORITY | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| | ) | United States Bankruptcy Court |
| *Movant* | ) | Savannah, Georgia |
| | ) | By lbarnard at 1:20 pm, Jul 13, 2010 |
| v. | ) | |
| JAMES G. SHANNON, JR. | ) | |
| *Respondent* | ) | |

## MEMORANDUM AND ORDER
## ON MOTION FOR RELIEF FROM STAY

Debtor's case was filed on December 4, 2009. On May 10, 2010, a motion was filed by the Georgia Development Authority ("GDA") seeking relief from stay so that it may foreclose on the collateral pledged by Debtor to secure a substantial indebtedness. That debt originated in February 2008, in the amount of $3,050,000.00.[1] The original loan called for twenty-four successive annual payments of $253,600.00 commencing January 1,

---

[1] Except where the precise number is material I will utilize rounded or approximate numbers throughout this opinion.

AO 72A
(Rev. 8/82)

2009. <u>Promissory Note</u>, Movant's Exhibit 4. As collateral to secure that indebtedness, GDA was granted deeds to secure debt and security interests covering substantially all of Debtor's assets, including real estate in Screven County, timber, winery equipment, and an assignment of a life insurance policy. Debtor suffered a poor crop in 2008 and experienced cost overruns in purchasing and installing equipment, and in commencing the operation of his winery. GDA reviewed the situation and agreed to defer the first annual payment. However, on January 1, 2010, Debtor also failed to make the first deferred annual payment. GDA seeks stay relief based on the lack of payments, insufficient equity in the property to protect its interest, and lack of necessity for an effective reorganization —believing that no reorganization of Debtor's business is feasible.

After conducting an evidentiary trial on June 4, 2010, I make the following Findings of Fact and Conclusions of Law, and hold that stay relief is denied on an interim basis.

## FINDINGS OF FACT

Because Debtor failed to make the 2009 payment, the balance on the GDA loan at the time of filing was $3,272,339.53. Interest accrues at a rate of $17,000.00 per month, bringing the total indebtedness as of the date of trial to $3,477,167.26. At the time the loan was made, based on a 2007 appraisal of the 226 acre tract and a 2008 appraisal of a 457 acre tract which included the winery, GDA and Debtor believed that Debtor's real estate and improvements were worth $4,090,000.00. Accordingly, when the loan was

originated there was a substantial equity cushion. It is unnecessary to comment at length, but it is fair to say that since 2008 real estate values have suffered some of the worst reductions in recent history.

Donald Wilder, GDA's assistant director and a qualified real estate appraisal expert, has examined current market conditions and, believing that there has been an overall fifteen percent pull back in real estate values in the relevant market, concludes Debtor's real estate to be worth $3.5 million. In light of the potential holding period, expenses of sale, and expenses of maintaining the property pending sale, Mr. Wilder anticipates that GDA would be $250,000.00 under water in the event of a foreclosure. However, in reaching those numbers Mr. Wilder applied a fifteen percent across the board reduction to the earlier appraised values. If the Court accepts his fifteen percent reduction estimate, but applies that reduction only to the land value and not to the winery equipment, buildings, and other improvements, the adjusted net value would be $3,740,000.00. Based on all the testimony, it is even unclear whether the fifteen percent reduction in land value would be an appropriate adjustment to all the categories of land on the two tracts, consisting as they do of open land, vineyard, and timberlands. Both his appraisal report and that of Remer Clifton, Debtor's appraisal expert, were admitted into the record. Summary Appraiser's Report, Movant's Exhibit 6; Appraisal Report, Debtor's Exhibits 1 and 2.

Clifton disputed the fifteen percent reduction figure for Screven County land. Recognizing that there has been serious deterioration in land values generally, Clifton

believes that the Screven County market has been more stable. According to him, Screven County land values were never the subject of as much escalation in value during the real estate boom of 2004-2006 as were some of the surrounding counties in Georgia. Accordingly, when the market adjusted, it suffered a less significant drop in values. He ultimately concluded that the value of the subject property would be between $3.6 and $4 million and believes that there will be no further diminution in value between the date of his testimony and January 2011, when the next annual payment comes due. In the meantime, Debtor has planted his 2010 crop.

At the risk of oversimplifying the matter too much, Debtor's business model involves the sale of grapes from his vineyards to more than twenty-five hundred retail outlets sold as fresh produce. He has more recently, with the refinancing of an older loan and the advance of additional monies by the GDA, built the winery. The winery should allow Debtor to create a profit center off of a portion of his crop which was either unsuitable for the retail market or might better be directed to making juices and wines. He now has 200 acres of producing vineyards, anticipates an excellent crop, and believes he will sell this crop between August and November of this year, which will enable him to propose a realistic and feasible plan. His opinion of the quality of his product was supported by the testimony of Ray Hicks and Joseph Smith.

Mr. Hicks works with the University of Georgia Cooperative Extension in Screven County, providing consultation and advice to farm producers. He testified that he

has examined the crop and has found that Debtor is employing good agricultural management practices, and that the crop appears to be plentiful and in good condition. Mr. Smith is an operator of a vineyard and winery in North Georgia and a consultant to others in the business. He has reviewed Debtor's operation, and has found that Debtor has 32,000 gallons of inventory, which is of excellent quality, in storage and ready for sale. He believes that Debtor's muscadine wines are in high demand and will bring excellent prices even in bulk. Debtor is actively and successfully pursuing the appropriate licensing and distribution networks to capitalize on wholesale and retail markets. According to his testimony, which was uncontradicted, Debtor has current inventory on hand worth $1 million, uses state of the art equipment, operates attractive tasting rooms in both Screven County and in Savannah, and is operating a business which is potentially quite solid.

## CONCLUSIONS OF LAW

After consideration of all the testimony I conclude that the Movant has failed to carry its burden of proving lack of equity under 11 U.S.C. § 362(d)(2)(A). Both experts are in the process of updating their appraisals and it may be necessary for the Court to conduct a further evidentiary hearing before reaching a final conclusion as to value. However, based on the old appraisals as adjusted, in consideration of the expertise of the experts before the Court, I conclude that there is an equity cushion of sufficient size in the collateral pledged to the Georgia Development Authority to deny the Motion on an interim basis. Debtor has excellent prospects for a good crop season, has expanded his inventory, has a more effective distribution network than in the past, and is producing on more acres of

land. He is operating according to appropriate business and agricultural standards, and I agree with the conclusion that there is no foreseeable prospect of any deterioration in the position of GDA between now and the date its next annual payment comes due.

Debtor has pledged to file a disclosure statement and plan in the near future, which will be the subject of further hearings. While it is not necessary for Debtor to prove at this point that the plan is confirmable (*see e.g.*, In re R & G Properties, Inc., 2009 WL 1076703 (Bankr. D. Vt. 2009)), I do conclude preliminarily that he has made at least a *prima facie* showing that this business can succeed under an approved reorganization plan that he is ready to publish for the examination of creditors and the Court. *See* United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 376 (1988) ("[T]here must be a reasonable possibility of a successful reorganization within a reasonable time.") (punctuation omitted); In re YL West 87th Holdings I LLC, 423 B.R. 421, 444 (Bankr. S.D.N.Y. 2010) ("Debtors need not show that a plan is confirmable but that the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable.") (punctuation omitted).

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Relief from Stay is denied on an interim basis and will be assigned for a final hearing at the same date and time as confirmation of Debtor's plan, or such earlier date as either party may request if there are updated appraisals

in hand and there is a basis for proceeding independently on the final hearing in this matter.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This ___9th___ day of July, 2010.